### 15386.  WILLIAMS *v.* McINTOSH.

The answer setting up that the alleged libelous publication as to the conduct of the plaintiff as a public official was a privileged communication is not subject to a general demurrer or to certain special grounds of the demurrer interposed. The court erred, however, in not sustaining the special demurrer as to subsections *d* and *e* of paragraph 13 of the answer; and this error rendered the subsequent proceedings nugatory.

DECIDED NOVEMBER 14, 1924.  REHEARING DENIED DECEMBER 9, 1924.

Action for libel; from city court of Thomasville—Judge Hammond.  January 17, 1924.

Application for certiorari was made to the Supreme Court.

*Titus & Dekle,* for plaintiff.

*P. C. Andrews, W. W. Alexander, E. K. Wilcox, H. J. MacIntyre, J. B. Burch,* for defendant.

PER CURIAM.  Williams brought suit against McIntosh, alleging damages on account of the composition, publication, and circulation of the following alleged libelous matter: "To the Public: The county records show that Mr. Tillman has been paid by the county $9489.54, that Mr. Dyson has been paid by the county $16,432.95, making a total of $25,922.57. At a commissioners meeting some time ago, before any mules had been hired from any one, Commissioner Chastain called to the attention of the board that he had an offer from Faucett and Dopson for forty mules or less, for the use of the county for their feed only. No notice was given at that time to this offer of mules without hire. At a meeting of the board of commissioners, October 10, 1922, Commissioner Chastain reminded the board of the offer of the mules without hire, and the board admitted that this offer had been made. Chairman Williams, when pressed by Commissioner Chastain, admitted that

this offer of mules without hire had been made to him individually as a commissioner and as chairman also. All the above information was given to me by Commissioner Chastain with the authority to say it. When I made the statement that Chairman Williams did not accept mules without hire, but hired instead his own mules, I had no idea that he had dumped his entire mill, outfit on the county pay-roll. It is quite probable that with the large amount received by these financial proteges of Chairman Williams from the county funds, that all the money advanced by Chairman Williams to them, for purchase of houses or other things, may have been paid. Mules hired at first at $5.50 per day with driver per pair and now at $4.50 per day a pair, with the sale of lumber to the county without competitive bids, and high prices for their personal services, will pay debts pretty fast and make one rich pretty easy. The best type of public officials respect their fiduciary responsibility, and regard public office as a public trust. But this principle does not seem to be the guide of Chairman Williams, who acts as if a public office was a private possession. No matter what ethics may actuate the chairman in his expenditure of public money, or whether he has any ethics in the matter at all, the facts stand out clearly that he has expended a large amount of the county funds for mule hire when the mules were offered him without hire. The public will understand that all these matters are relative to public affairs and the methods of a public official, and, therefore, proper matter for public information and public statement. November 3, 1922. Respectfully, T. M. McIntosh."

The defendant pleaded that such matter was composed, published, and circulated in good faith, upon reasonable grounds and without malice, and to protect his own interest in a matter where it was concerned; and that such matter constituted comment upon the acts of a public official; and he claimed a qualified privilege under subsections 3 and 6 of section 4436 of the Civil Code of 1910. Parts of his plea were as follows: " (d) That on or about the 13th day of March, 1922, the said plaintiff, as chairman of the board of county commissioners of Thomas county, drew out, or caused to be drawn out, of the Trust Company of Georgia, the sum of $41,000, or thereabout, belonging to the County of Thomas, and where the same was deposited and earning four and one half ᵽer cent. interest per annum, and placed or caused to be placed in

the Citizens Bank and Trust Company of Thomasville, Georgia, a banking institution in which plaintiff was at said time a stockholder, and of which he was a director, at four per cent. interest per annum." "(e) That the said plaintiff, on or about the 13th day of March, 1922, drew from or caused to be drawn from the Bank of Thomasville, the legal depository for the County of Thomas, the sum of $11,000, belonging to the County of Thomas, and in which bank it was deposited to its credit, and where it was earning an interest of 3 ½ per cent. per annum, and deposited or caused the same to be deposited in the Citizens Banking and Trust Company of Thomasville, Georgia, a banking institution of said City of Thomasville in which the said plaintiff was at said time a stockholder and of which he was a director, at 4 per cent. interest per annum."

The plaintiff demurred both generally and specially to the answer, the special grounds of the demurrer to subsections d and e of paragraph 13 above quoted being as follows:

"4.　Because the facts alleged in subparagraphs d and e of paragraph 13 of the answer are not pertinent or in any manner whatsoever related to or connected with the acts charged by the defendant against the plaintiff in the alleged libelous writing, and because the said facts therein contained are entirely irrelevant to, and do not constitute any basis for, the alleged pleaded privilege in the publication of the alleged libel.

"5.　Because the said facts alleged in said subparagraphs d and e of paragraph 13 are not the same as charged by the defendant to have been committed by the plaintiff in the alleged libelous writing, and are in law insufficient to authorize or sustain the averment that the defendant acted by reason thereof in the publication of said libelous writing, in good faith and without malice; nor did the said facts so alleged therein either justify or authorize the composition or publication of said libelous writing upon the ground that the said libelous writing was a fair and legitimate criticism of the acts referred to in said subparagraphs, but, on the contrary, the said averments show that the said defendant was using the said alleged facts for the purpose of wilfully, falsely, and maliciously defaming the good name of the plaintiff, and exposing him to public hatred, ridicule and contempt.

"6.　Because the facts alleged in said paragraph 13 and the

subdivisions thereof, averred by the defendant to have been discovered by him prior to the publication of said alleged libel, were insufficient, even if true, to excuse or mitigate, or to render privileged, either absolute or qualifiedly, the composition and publication of the distinct and separate acts alleged to have been committed by the plaintiff in the alleged libelous writing.

"7. Because the said facts contained in said paragraph and the subdivisions thereof are insufficient in law to render the alleged libelous writing a privileged communication, either absolute or qualified."

The court overruled the demurrers to the answer, and the plaintiff excepted pendente lite and now assigns error thereon.

(a) The general demurrer and all the special grounds of the demurrer to the answer, except those set out above as to subparagraphs d and e of paragraph 13, were properly overruled. See Civil Code (1910), § 4436; *Etchison* v. *Pergerson,* 88 *Ga.* 624 (15 S. E. 680) ; *Pearce* v. *Brower,* 72 *Ga.* 243 (b) ; *Sheflall* v. *Central of Ga. Ry. Co.,* 123 *Ga.* 589 (51 S. E. 646) ; *Atlanta News Co.* v. *Medlock,* 123 *Ga.* 719, 720 (51 S. E. 756, 3 L. R. A. (N. S.) 1139).

(b) The matters referred to in subparagraphs d and e of paragraph 13 of the answer were not contained in the alleged libelous publication which was the basis of the suit, and the special grounds of the demurrer as to these two subparagraphs were good for the reasons stated in these special grounds; and the court erred in overruling them.

(c) The court having erred as stated above, everything thereafter was nugatory, and the judgment must be

*Reversed. Broyles, C. J., and Luke and Bloodworth, JJ., concur.*