Jack T. HAMMER, Plaintiff–Appellant,

v.

Edward L. SLATER, Loretta Slater, Defendants,

Herbert Jaffess, Renee Jaffess, Defendants–Appellees.

No. 93–8917.

United States Court of Appeals, Eleventh Circuit.

May 18, 1994.

tional distress. Because we find that there was a genuine issue of material fact as to the Jaffesses' actual malice with respect to the libel claim, we reverse in part and remand for further proceedings. We affirm the court's grant of summary judgment on the claim for intentional infliction of emotional distress.

## I. BACKGROUND

Many of the basic facts underlying this action are not disputed by the parties.[1] During the 1980s, the Jaffesses invested in several limited partnerships, including oil and gas interests and real estate ventures, many of which were related to companies owned by or affiliated with Ira Levenshon. Most of the Jaffesses' investments were made through Robert Chalnick, a securities salesman employed by Levenshon & Company, a registered broker/dealer. Among the Jaffesses' investments were interests in two limited partnerships that owned and operated apartment complexes in metropolitan Atlanta, Ansley/Atlanta, Ltd. ("Ansley/Atlanta") and the Baytree Apartments ("Baytree"). According to the program description, the general partners of Ansley/Atlanta were two corporations, Levenshon Properties Corporation and Housing Systems, Inc. ("HSI"). Hammer was the president, chairman, and chief executive officer of HSI. Hammer had no connection to Baytree.

Eventually, the Jaffesses became dissatisfied with their investments. They believed they had received false or misleading oral advice from Chalnick when purchasing the Levenshon-related investments. Along with their friends and fellow investors, Edward and Loretta Slater, the Jaffesses decided to attempt to recoup some of their losses. Mr. Slater had been president of The Levenshon Companies, Inc., but had resigned in May 1989 for reasons disputed by the parties in the instant case.[2]

David H. Flint, James Christopher Desmond, Schreeder, Wheeler & Flint, Atlanta, GA, for plaintiff-appellant.

Joseph William Watkins, Debra Egger LeVorse, Long, Weinberg, Ansley & Wheeler, Atlanta, GA, for defendants-appellees.

Before ANDERSON and BIRCH, Circuit Judges, and ATKINS,* Senior District Judge.

BIRCH, Circuit Judge:

The plaintiff-appellant, Jack Hammer, appeals the district court's grant of summary judgment to the defendant-appellees, Herbert and Renee Jaffess, in this diversity action for libel and intentional infliction of emo-

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. When reviewing the grant or denial of a motion for summary judgment, however, we view all evidence and factual inferences in the light most favorable to the non-moving party. *Adickes v.*

*S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

2. Hammer contends that Slater left the company because he discovered wrongdoing within the company, but this claim is disputed by the Jaffesses.

In the late 1980s, Randolph Coleman, a Florida attorney and a former investor in a Levenshon-related limited partnership, began representing other disgruntled investors in cases against Levenshon and his companies. After meeting with Coleman in the summer of 1990 to discuss their potential claims, the Jaffesses and Slaters entered into representation agreements with Coleman. Pursuant to these agreements, Coleman drafted a proposed RICO[3] complaint naming as defendants Levenshon, Hammer, HSI, and various other individuals and entities related to the disputed investments. After the Jaffesses and Slaters reviewed the complaint and made corrections, it was sent with a demand letter to the various defendants, including Hammer and HSI.[4] The RICO complaint specifically identifies Hammer as a general partner in Ansley/Atlanta and implicates him generally, along with the other named defendants, in various fraudulent practices including mail and wire fraud, securities violations, and racketeering. The demand letter directed to Hammer gave him ten days to pay $75,000, plus accrued interest, or else the complaint would be filed.

Hammer refused to accede to the plaintiff's demands. He contends, and the plaintiffs now concede, that many of the allegations against him contained in the RICO complaint are false or misleading. He has never had any association with Baytree, and he was not a general partner of Ansley/Atlanta. Moreover, Hammer never personally sold the plaintiffs any investments. Hammer denies that he committed any of the fraudulent acts set forth in the complaint.

Hammer filed the present action in United States District Court for the Northern District of Georgia, alleging libel and intentional infliction of emotional distress. Jurisdiction is based on diversity of citizenship. Hammer originally named as defendants both the Jaffesses and the Slaters, although he subsequently settled with the Slaters.

On November 19, 1991, the Jaffesses moved for summary judgment. On June 25, 1992, the district court granted summary judgment on the intentional infliction claim, but reserved ruling on the libel claim. Because the parties had failed to properly address the issue of actual malice, the court dismissed without prejudice the portion of the motion dealing with libel and directed the defendants to renew that part of the motion later.

On September 1, 1992, the Jaffesses resubmitted their motion for summary judgment as to the libel claim, contending that there was no genuine issue of material fact as to actual malice. The district court agreed with the Jaffesses and granted summary judgment as to the remaining libel claim. The court held that the Jaffesses had carried their initial burden by showing that there was no genuine issue as to actual malice. The burden then shifted to Hammer to rebut this evidence, and, according to the court, Hammer failed to present sufficient evidence of actual malice to create a genuine issue of material fact. Hammer timely filed this appeal.

## II. DISCUSSION

### A. Summary Judgment Standard

 Although the substantive aspects of this diversity case are controlled by the law of Georgia, federal law controls the procedural aspects. *Ford v. Citizens & Southern Nat'l Bank,* 928 F.2d 1118, 1121 (11th Cir. 1991); *Lundgren v. McDaniel,* 814 F.2d 600, 605 (11th Cir.1987); *National Distillers & Chem. Corp. v. Brad's Mach. Prods., Inc.,* 666 F.2d 492, 494–95 (11th Cir.1982). The grant of summary judgment is therefore controlled by Federal Rule of Civil Procedure 56. We review the grant or denial of a motion for summary judgment *de novo,* applying the same legal standards employed by the district court. *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir.1990).

---

**3.** The complaint alleged a cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*

**4.** There is conflicting evidence as to whether the plaintiffs ever intended to actually file the com-

plaint. According to the representation agreement, however, any further representation would be discussed if the proposed complaint and demand letters did not obtain satisfactory results.

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where, as here, the non-moving party bears the burden of proof on an issue at trial, the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support its case, or present "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir.1991) (en banc). Once the moving party has met its initial burden by negating an essential element of the non-moving party's case, the burden on summary judgment shifts to the non-moving party to show the existence of a genuine issue of material fact. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993). For issues on which the non-moving party will bear the burden of proof at trial, the non-moving party must either point to evidence in the record · or present additional evidence "sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* at 1116–17.

## B. Libel Claim

Hammer claims that the Jaffesses committed libel by publishing the proposed complaint, which wrongfully accuses him of various criminal activities. For purposes of this appeal, the Jaffesses do not dispute the publication of the document nor the defamatory nature of the published matter. Furthermore, both parties concede that the statements, unless made maliciously under O.C.G.A. § 51–5–9, were conditionally privileged under O.C.G.A. § 51–5–7. Georgia's conditional privilege statute provides limited protection for "[s]tatements made with a good faith intent on the part of the speaker to protect his interest in a matter in which it

is concerned." O.C.G.A. § 51–5–7(3).[5] Georgia cases have held that · in order to · come within the purview of section 51–5–7, the defendant must show, among other things, " 'good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons.' " *Camp v. Maddox*, 93 Ga.App. 646, 649, 92 S.E.2d 581, 584 (1956) (quoting *Sheftall v. Central of Ga. R. Co.*, 123 Ga. ·589, 593, 51 S.E. 646, 648 (1905)). Section 51–5–9, however, provides a right of action for the malicious use of the conditional privilege. That section provides in full: "In every case of privileged communications, if the privilege is used merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted, the party defamed shall have a right of action." O.C.G.A. § 51–5–9. The issue in this appeal is whether or not there is a genuine issue of material fact as to whether the Jaffesses' conduct falls within the. provisions of section 51–5–9.

. Georgia courts have been less than clear as to what this provision contemplates. In several cases, the courts have employed a ·subjective interpretation in which the phrase "private· malice" denotes hostility or ill will on the part of the speaker. *See Van Geter v. Housing Auth.*, 167 Ga.App. 432, 432, 306 S.E.2d 707, 708 (1983) (privilege is lost when speaker acts "willfully, corruptly, or maliciously"); *Land v. Delta Airlines, Inc.*, 147 Ga.App. 738, 739, 250 S.E.2d 188, 190 (1978) ("Malice to avoid qualified privilege must be actual and with evil intent."). The courts have distinguished malice in this subjective, common-law sense from the objective concept of constitutional malice. *See, e.g., Williams v. Trust Co.*, 140 Ga.App. 49, 55–56, 230 S.E.2d 45, 50–51 (1976).

Nevertheless, Georgia courts, over time and without explanation, have apparently engrafted upon O.C.G.A. § 51–5–9 the constitutional "actual malice" standard outlined for public figure defamation cases in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct.

---

**5.** "The defense of 'privilege' in a libel action is one of 'confession and avoidance.' It admits the publication of the allegedly defamatory matter but asserts it was done on a privileged occasion and bona fide in promotion of the object for which the privilege was granted." *Morton v. Gardner*, 155 Ga.App. 600, 604, 271 S.E.2d 733, 737 (1980).

710, 11 L.Ed.2d 686 (1964). Countless Georgia defamation cases, involving both private- and public-figure plaintiffs,[6] have interpreted O.C.G.A. § 51-5-9 using the *New York Times* standard: whether the allegedly defamatory matter was uttered with knowledge that it was false or reckless disregard for whether it was true or false. *E.g., Heard v. Neighbor Newspapers, Inc.*, 190 Ga.App. 756, 758, 380 S.E.2d 279, 281, *rev'd on other grounds*, 259 Ga. 458, 383 S.E.2d 553 (1989); *Clayton v. Macon Tel. Pub. Co.*, 173 Ga.App. 466, 467, 326 S.E.2d 789, 790 (1985); *Fiske v. Stockton*, 171 Ga.App. 601, 603, 320 S.E.2d 590, 593 (1984); *Meyer v. Ledford*, 170 Ga. App. 245, 247, 316 S.E.2d 804, 807 (1984); *Morton v. Gardner*, 155 Ga.App. 600, 605, 271 S.E.2d 733, 737 (1980); *Sherwood v. Boshears*, 157 Ga.App. 542, 543, 278 S.E.2d 124, 126 (1981).

After a lengthy discussion analyzing many of the foregoing cases, the district court in the instant case found it "uncertain whether Georgia has engrafted the *New York Times* actual malice standard into O.C.G.A. § 51-5-9." District Court Order at 15 (Apr. 26, 1993). Consequently, the district court focused on

> whether the record will permit an inference of ill will or hostility by the Jaffesses toward Hammer, and also whether there is a basis in the record for determining that the Jaffesses in fact entertained "serious doubts" as to the truth of the allegedly libelous statements contained in the proposed complaint.

*Id.* at 15–16. The district court thus employed the more subjective, common-law actual malice standard.

While we may agree with the district court's interpretation of section 51-5-9, we are bound by the substantive law of Georgia and cannot ignore the long line of Georgia

cases applying the *New York Times* actual malice standard to cases involving section 51-5-9, even in the context of private figure plaintiffs. In reviewing the court's grant of summary judgment, therefore, we focus on whether there is a genuine issue of material fact as to whether the Jaffesses published the proposed complaint with knowledge of its falsity or reckless disregard for its truth.

 Hammer has made no colorable showing that the Jaffesses had actual or constructive *knowledge* that the allegations contained in the complaint were untrue. In order to prevail in this appeal, therefore, Hammer must show that there is a genuine issue as to whether the Jaffesses acted with reckless disregard for the truth or falsity of their allegations.[7] Georgia courts have explained reckless disregard as whether the defendant entertained " 'serious doubts as to the truth of his publication.' " *Hemenway v. Blanchard*, 163 Ga.App. 668, 672, 294 S.E.2d 603, 606 (1982) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968)). The plaintiff must make a " 'showing that a false publication was made with a "high degree of awareness of ... probable falsity." ' " *Id.* (alteration in original) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 332, 94 S.Ct. 2997, 3003, 41 L.Ed.2d 789 (1974) (quoting *St. Amant*, 390 U.S. at 731, 88 S.Ct. at 1325)).

 We find that the Jaffesses carried their initial burden on summary judgment by presenting colorable evidence that they did not act with actual malice. In their resubmitted motion, the Jaffesses relied upon their own depositions, the depositions of the Slaters and Coleman, and various documents relating to their investments to show that they did not act with ill will or hostility toward Hammer and that they had a good-

---

**6.** Indeed, several Georgia defamation cases apply the *New York Times* actual malice standard without even discussing whether the plaintiff was a public or private figure. *E.g., Heard v. Neighbor Newspapers, Inc.*, 190 Ga.App. 756, 380 S.E.2d 279, *rev'd on other grounds*, 259 Ga. 458, 383 S.E.2d 553 (1989); *Meyer v. Ledford*, 170 Ga.App. 245, 316 S.E.2d 804 (1984); *Sherwood v. Boshears*, 157 Ga.App. 542, 278 S.E.2d 124 (1981).

**7.** *See, e.g., Melton v. Bow*, 145 Ga.App. 272, 273, 243 S.E.2d 590, 591 (holding that reckless disregard is the equivalent of malice), *aff'd*, 241 Ga. 629, 247 S.E.2d 100, *cert. denied*, 439 U.S. 985, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978); *Montgomery v. Pacific & Southern Co.*, 131 Ga.App. 712, 717, 206 S.E.2d 631, 635 (same), *aff'd*, 233 Ga. 175, 210 S.E.2d 714 (1974), *overruled on other grounds by Diamond v. American Family Corp.*, 186 Ga.App. 681, 368 S.E.2d 350, *cert. denied* (Ga.1988).

faith belief that the allegations in the complaint were truthful. The Jaffesses maintain that they justifiably relied on information provided by their close friend, Ed Slater, a former insider of the Levenshon companies, as well as the legal advice of Coleman, an attorney experienced in securities litigation. They point out that they published the complaint only to those parties named as defendants. Finally, the Jaffesses note that early in litigation, parties often do not know all of the facts and that discovery of all relevant facts was one reason for sending the complaint to the defendants rather than filing it immediately. We agree with the district court that these facts sufficiently supported the Jaffesses' initial burden of showing the absence of actual malice. Therefore, since Hammer would have the ultimate burden at trial of proving actual malice, the burden on summary judgment shifted to him to set forth additional information presenting a genuine issue of material fact.

■ Hammer relied upon the depositions of the Jaffesses, the Slaters, and Coleman to show that the Jaffesses acted with reckless disregard for the truth of the allegations contained in the proposed complaint. Hammer points out that the Jaffesses were, by their own admission, sophisticated investors. He characterizes their complaint as a greed-driven attempt to recover losses that resulted from ill-advised investments. Hammer contends that the Jaffesses were reckless to rely on the information provided by Slater because Slater's departure from the Levenshon companies was not on good terms and Slater therefore had a conflict of interest in the potential litigation. Hammer also contends that Coleman was reckless in his preparation of the complaint and that Coleman's behavior is imputable to the Jaffesses. Finally, Hammer sets forth numerous misrepresentations or factual errors contained in the complaint and contends that these mistakes are evidence of recklessness. Hammer maintains that the Jaffesses did in fact entertain serious doubts about the truth of their assertions.

We find that Hammer carried his burden on summary judgment of showing that there is a triable issue of fact as to the Jaffesses' actual malice. Construing the evidence in a light most favorable to Hammer, we find that a reasonable jury could find that the Jaffesses acted with reckless disregard for the truth of the allegations contained in the complaint. The Jaffesses were experienced investors who made unfounded allegations against a person who had little or no involvement in the disputed investments. Whether such conduct is merely negligent or rises to the level of recklessness is an issue for the jury.

At the heart of this dispute are issues of credibility: whether one believes Hammer's evidence or that of the Jaffesses. We have repeatedly held that credibility is a factual issue that is uniquely the province of the jury. E.g., United States v. Freyre–Lazaro, 3 F.3d 1496, 1503 (11th Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 1385, 128 L.Ed.2d 59 (1994); Braswell v. ConAgra, Inc., 936 F.2d 1169, 1174 (11th Cir.1991); United States v. Greer, 850 F.2d 1447, 1452 n. 8 (11th Cir.1988). Moreover, Georgia courts have repeatedly held that the issue of malice in conditional privilege cases is generally a jury issue, inappropriate for summary judgment.[8] E.g., Speedway Grading Corp. v. Gardner, 206 Ga.App. 439, 441, 425 S.E.2d 676, 678 (1992); Elder v. Cardoso, 205 Ga. App. 144, 147, 421 S.E.2d 753, 756 (1992); King v. Masson, 148 Ga.App. 229, 231, 251 S.E.2d 107, 108 (1978).

We therefore find it inappropriate to invade the province of the jury in this case. We cannot say as a matter of law that the Jaffesses have negated the existence of a genuine issue of material fact as to their own actual malice. Hammer has presented colorable evidence from which a reasonable jury could find that the Jaffesses acted with reckless disregard as to the truth or falsity of their allegations. We therefore reverse the district court's grant of summary judgment as to the libel claim and remand for further proceedings.

8. We are, of course, well aware of the many cases where courts have decided issues of privilege and malice as a matter of law. We find those cases factually distinguishable from the instant case.

## C. Intentional Infliction of Emotional Distress

 Hammer contends that the district court erred by granting summary judgment on his claim for intentional infliction of emotional distress. In its order of June 25, 1992, the district court stated, "Georgia case law holds, in no uncertain terms, that Defendants' conduct in threatening to file a lawsuit, and in accusing Plaintiff of dishonesty and lack of integrity in connection with his employment does not give rise to an intentional infliction claim." District Court Order at 8 (June 25, 1992). On April 26, 1993, the district court declined to reconsider its holding.

 We agree with the district court that summary judgment was proper on Hammer's claim for intentional infliction of emotional distress. In order to support a claim for intentional infliction, the plaintiff must show that the defendant's behavior was so extreme or outrageous that " 'no reasonable man could be expected to endure it.' " *Bridges v. Winn–Dixie Atlanta, Inc.*, 176 Ga.App. 227, 230, 335 S.E.2d 445, 448 (1985) (quoting *Restatement (Second) of Torts* § 46(1) cmt. j (1965)). In *Rolleston v. Huie*, 198 Ga.App. 49, 400 S.E.2d 349 (1990), *cert. denied* (Ga. 1991), the court held that

> it is clear that the mere filing of a lawsuit is not the type of humiliating, insulting or terrifying conduct which will give rise to a claim for the intentional infliction of emotional distress. Since the actual filing of a lawsuit, standing alone, does not give rise to a viable claim for the intentional infliction of emotional distress, the mere "threat" to file a lawsuit certainly does not.

*Id.* at 51, 400 S.E.2d at 351–52 (citations omitted).[9]

 We recognize that, "[i]n cases in which willfulness is an issue, 'summary judgment should be granted with caution, since questions such as intent or motive are presented.' " *Miller v. United States*, 945 F.2d 1464, 1467 (9th Cir.1991) (quoting *Simpson v. United States*, 652 F.2d 831, 834 (9th Cir. 1981)). Nevertheless, as the Georgia Supreme Court has recognized, "[w]hether a claim rises to the level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." *Yarbray v. Southern Bell Tel. & Tel. Co.*, 261 Ga. 703, 706, 409 S.E.2d 835, 838 (1991). The district court properly found as a matter of law that Hammer had failed to make the requisite showing of outrageousness.

## III. CONCLUSION

Hammer appeals the district court's grant of summary judgment on his claims for libel and intentional infliction of emotional distress. We find that the district court erred by granting summary judgment on the libel claim. Hammer presented sufficient evidence of the Jaffesses' reckless conduct to create a genuine issue of material fact as to actual malice. We therefore reverse the court's grant of summary judgment on the libel claim and remand for further proceedings. We agree with the district court that Hammer has failed to present a viable issue with respect to his claim for intentional infliction of emotional distress. We therefore affirm the court's grant of summary judgment as to that cause of action.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

9. We join the district court in rejecting Hammer's contention that the threshold for claims for intentional infliction was somehow lowered by

*Yarbray v. Southern Bell Tel. & Tel. Co.*, 261 Ga. 703, 409 S.E.2d 835 (1991).