Alberta **FLOYD**, Plaintiff,

v.

**ELMORE COUNTY BOARD OF EDUCATION, et .al., Defendants.**

**Civil Action No. 2:03cv608–T.**

United States District Court,
M.D. Alabama,
Northern Division.

May 24, 2004.

Amardo Wesley Pitters, A. Wesley Pitters, P.C., Theron Stokes, Montgomery, AL, for Plaintiff.

George Houston Howard, II, Howard, Dunn, Howard & Howard, Wetumpka, AL, for Defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

In this race-discrimination case, plaintiff Alberta Floyd claims that, because she is an African–American, she was rejected for promotion to the position of Child Nutrition Program Manager at Eclectic Middle School in Elmore County, Alabama. She rests her claim on Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C.A. §§ 1981a, 2000e through 2000e–17), the Civil Rights Act of 1866, as amended (42 U.S.C.A. § 1981), and the Thirteenth and Fourteenth Amendments to the United States Constitution (as enforced through 42 U.S.C.A. § 1983). She names as defendants the Elmore County Board of Education and all its members, in both their individual and official capacities; she also names the Elmore County Superintendent, in both his individual and official capacities. This court's jurisdiction is proper under 42 U.S.C.A. § 2000e–5(f)(3) (Title VII), 28 U.S.C.A. §§ 1331 (federal question) and 1343 (civil rights).

Currently before the court are the defendants' motions for summary judgment. For the reasons that follow, the motions will be granted.

## I. SUMMARY–JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Where, as here, the non-moving party bears the burden of proof at trial, "the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support ... [her] case, or present 'affirmative evidence demonstrating that the non-moving party will be unable to prove ... [her] case at trial.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir.1994) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir.1991) (en banc)). Once the party seeking summary judgment has informed the court of the basis for her motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To this end, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Ze-*

*nith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL BACKGROUND

Floyd has worked as a cafeteria worker for the Elmore County school system since 1985, first at Elmore County High School, then at Eclectic Elementary School, and then once again, from 1989 to the present, at Elmore County High School. At the end of 2001 school year, the position of Child Nutrition Program Manager at Eclectic Middle School became available, and both Floyd and Debbie Eason, a white person, applied. Eason worked as a cafeteria worker at Elmore County High School until 2000, when she was transferred, at her own request, to Eclectic Middle School.

When a lunchroom manager is absent, a cafeteria worker is chosen by that manager to serve as a substitute. Prior to 2000, when Floyd and Floyd both worked at Elmore County High School, Floyd rarely, if ever, served as a substitute lunchroom manager. In 2000, Floyd sometimes served as a substitute lunchroom manager while her supervisor was out for surgery. She was also trained as a cashier and was allowed to do bookkeeping work, make deposits, and do other routine managerial tasks.

When the Child Nutrition Program Manager position became available, Janice Allison, the Child Nutrition Director, and Jim Adams, the Principal of Eclectic Middle School, interviewed Floyd, Eason, and one other applicant for the position; four applicants were certified as qualified, but one was offered a position at another school before the interviews. All of the certified candidates were white except for Floyd. Allison and Adams made their recommendation to the county superintendent, who, in turn, submitted his recommendation to the school board for its consideration. Eason was the first-choice

recommendation, and Floyd was the second. Eason was then approved by the school board.

With this lawsuit, Floyd claims that she was not chosen for the position because of racial discrimination.

## III. DISCUSSION

### A.

As previously stated, Floyd relies on Title VII, § 1981, and the Thirteenth and Fourteenth Amendments, as enforced through § 1983, as the basis for her race-discrimination claim. Regardless as to the statutory basis of her claim, she and the defendants agree that she must prove the same thing: that she is the victim of intentional race discrimination.

Floyd's claim is analyzed using the burden-shifting technique articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993). Under the *McDonnell Douglas* approach, the plaintiff has the initial burden of establishing a prima-facie case of unlawful discrimination by a preponderance of the evidence. 411 U.S. at 802, 93 S.Ct. at 1824. A prima-facie case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). The plaintiff's prima-facie case raises a presumption of illegal discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir.2000) (en banc).

If the plaintiff establishes a prima-facie case, the burden then shifts to the defen-

dant to rebut the presumption by articulating a legitimate, nondiscriminatory reason for its employment action. *Holifield v. Reno,* 115 F.3d 1555, 1564 (11th Cir.1997). "This intermediate burden is 'exceedingly light.'" *Id.* (quoting *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir. 1994)). The defendant has a burden of production, not persuasion, and does not have to persuade a court that it was actually motivated by the reason advanced. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253–55, 258, 101 S.Ct. at 1093–94, 1096.

Once the defendant satisfies this burden of production, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman,* 229 F.3d at 1024 (internal citations omitted).

However, the establishment of a prima-facie case does not, in itself, entitle the plaintiff to defeat a summary-judgment motion. *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595 (11th Cir.1987); *Pace v. Southern Ry. Sys.,* 701 F.2d 1383, 1389 (11th Cir.1983). After the defendant proffers a nondiscriminatory and legitimate reason for its actions, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable fact finder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman,* 229 F.3d at 1037. The "long and short of it is that the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." *Id.* at 1026.

Moreover, "[p]rovided that the proffered reason is one that might motivate a rea-sonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman,* 229 F.3d at 1030.

■ The court need not resolve whether Floyd has established a prima-facie case because, even if she has, she still cannot prevail: For, the defendants have articulated legitimate and non-discriminatory reasons for selecting Eason over Floyd, and Floyd has not put forward sufficient evidence that *all* the reasons are pretextual for race discrimination. The defendants' reasons, which the court will discuss separately below, are as follows: (1) Eason had more administrative, bookkeeping, and computer training; (2) Eason had more experience serving as a substitute manager; (3) Eason had better communication skills; and (4) Eason scored better on a test.

*Administrative, Bookkeeping, and Computer Training:* The defendants contend that Eason had more administrative, bookkeeping, and computer experience than Floyd had and that, because these skills are important for a Child Nutrition Program Manager, this superior qualification motivated them to promote Eason. The duties and responsibilities section of the job description for the manager position states that bookkeeping is required, as is making inventories of all food equipment and supplies, and counting monies and making bank deposits.

Allison submitted an affidavit stating that:

"[I]t appeared to me that Ms. Eason had more experience and training in office management, bookkeeping, computers, and other administrative areas than Ms. Floyd. I knew that Ms. Eason was very quick to learn on computers because she had helped her manager ... implement

the Point of Sale software that we used in cafeterias."[1]

The defendants also contend that Floyd admitted that Eason had more experience in bookkeeping, office management, and computers. While this is accurate, Floyd also stated that Eason knew more about computers because "she got the opportunity—they trained her. They told her how to do it. There again, they would not train me. I asked, but they would not tell me how to do this."[2]

Despite Floyd's contention that she was denied training, Floyd does not present the court with a traditional discriminatory failure-to-train case. *See, e.g. Pafford v. Herman,* 148 F.3d 658, 667–69 (7th Cir. 1998). Instead, she contends that the fact that she was denied training is circumstantial evidence of an intent to discriminate against her in promotion. If the defendants purposefully allowed one potential candidate, but not the other, to be trained in the skills necessary for advancement, this action, although preceding the ultimate discriminatory conduct, could give rise to an inference of discrimination. *Cf. Allen v. Montgomery County, Ala.,* 788 F.2d 1485, 1488 (11th Cir.1986) (time-barred circumstantial evidence of discrimination may be used as a method of proof of intent). If it is true, as Floyd contends, that the defendants had discriminatory motives for promoting Eason, evidence that Eason was groomed for promotion or otherwise favored by the defendants could be additional circumstantial evidence that the defendants did indeed harbor discriminatory intent.

However, Floyd fails to submit sufficient evidence to support her contention that Eason was being prepared for a promotion and that Floyd was not. For example, the evidence suggests that, when computers were installed in the cafeteria, Eason "had a computer base knowledge" and volunteered to train her supervisors.[3] Allison states that she never asked Eason to do this and that Eason's assistance on the computer training "shows that she had initiative, it shows that she learned the computer skills necessary—a good bit faster."[4]

Similarly, Floyd has not demonstrated that the defendants' perception that Eason's administrative and bookkeeping skills were superior was pretextual. Both Floyd and Eason participated in a management apprentice program. Allison observed that Eason learned the material faster than Floyd, and Floyd does not rebut this.

In conclusion, Floyd has failed to come forward with sufficient evidence that the defendants' stated legitimate, nondiscriminatory reason—Eason had more administrative, bookkeeping, and computer training—is pretextual.

*Managerial Experience:* The defendants contend that Eason had more managerial experience than Floyd and that this factored into the promotion decision. When Cafeteria Manager Ann Walls was absent, it was Walls's responsibility to recommend someone to serve as a substitute manager, and Walls would always recommend Eason to serve as a substitute. This gave Eason more managerial experience, which, in turn, made her a more appealing candidate for promotion. Allison was aware that Eason was chosen to be the substitute manager more often than Floyd,

---

**1.** Defendants' motion for summary judgment, filed February 6, 2004 (Doc. no. 28), exhibit 4 (Allison affidavit).

**2.** Plaintiff's brief in response to defendants' motion for summary judgment, filed April 1, 2004 (Doc. no. 40), unlabeled exhibit at 83 (Floyd deposition).

**3.** *Id.,* unlabeled exhibit at 116 (Allison deposition).

**4.** *Id.* at 119.

though Allison did not know whether Floyd had ever requested to be a substitute manager.

Floyd has not presented evidence to suggest that Walls's decision to choose Eason over Floyd was due to a discriminatory reason, nor has she identified any evidence which would support this inference. Because Floyd has admitted that Eason had more managerial experience than she had and because Floyd has presented no evidence that this advantage was the result of intentional discrimination, Floyd has failed to come forward with sufficient evidence that the defendants' second stated legitimate, nondiscriminatory reason—Eason had more managerial experience—is pretextual.

*Communication Skills:* The defendants maintain that Eason was selected for promotion because she had better communications skills than Floyd had. Specifically, Allison says that, during the interviews, Eason gave specific and detailed answers, while Floyd gave simplistic answers and would have to be coaxed to elaborate.[5]

Floyd responds that the defendants' perception of her as less able to communicate is not based on an evaluation of the skills needed for the position and of Floyd's ability to meet those skills, but rather Allison's opinion is "based on the difference in way the races communicate."[6] By implication, Floyd seems to be contending that Allison's statement reflects the belief that speech patterns more common within African–American communities are less legitimate and that this belief is evidence of an intent to discriminate.

There is no evidence in the record that Allison's observation—that Eason elaborated on the answers to the interview questions, and gave detailed responses—

reflects any belief that African–Americans communicate differently from other races. More to point, there is no evidence in the record (or outside the record, as far as the court knows) that, in answering questions, African–Americans elaborate less, or give fewer details, than persons of other races. Floyd has not articulated how the defendants' reliance on "communication skills," as the defendants have outlined how they relied on such skills, could be a proxy for race. To be sure, while the communication-skill criterium is quite subjective and thus offers employers an easy opportunity to use it as a proxy for race, not all employment decisions that are based on communications skills constitute racial discrimination, and Floyd has not put forward any credible evidence to suggest that it was so used in her case. *Chapman,* 229 F.3d at 1034 ("subjective reasons are not the red-headed stepchildren of proffered nondiscriminatory explanations for employment decisions. Subjective reasons can be just as valid as objective reasons.").

In conclusion, Floyd has failed to come forward with sufficient evidence that the defendants' third stated legitimate, nondiscriminatory reason—Eason had better communication skills—is pretextual.

*Test Results:* The defendants' last stated reason for choosing Eason for promotion is that Floyd did worse on a skills test that was administered by Allison to both Floyd and Eason. Unlike the other reasons offered by the defendants, the court believes a reasonable juror could conclude that this reason is pretextual. This is because, in the context in which the test was given, it is improbable that a reasonable employer would use the results of the test as criteria for determining promotions; thus, this reason raises questions

---

5. *Id.* at 110–13.

6. Plaintiff's brief in response to defendants' motion for summary judgment, filed April 1, 2004 (Doc. no. 40), at 16.

as to the veracity of the defendants' claim that it factored into their decision.

The test, entitled "Cafeteria Assistant Examination," that the defendants claim factored into the decision was given in 1996, five years before the employment decision was made. Floyd alleges that, before she took the examination, she was informed that the test would not be used against her in employment decisions and, instead, that the test was being given for her own edification in order to give her an idea of those areas she might want to work on. Apparently, Allison had borrowed and modified a test that Mississippi had been using. The test consisted of: (1) 25 multiple choice questions;[7] (2) an equivalent food measure matching requirement (e.g. 1/4 cup = 4 tablespoons); (3) some simple arithmetic questions; (4) an identification of common cooking abbreviations; and (5) a short answer portion, where the test-taker was given a recipe and asked what her first, second, third, and fourth step would be in preparing the recipe. Eason scored 79.5/100, and Floyd scored 65.5/100.

The idea that a test, which had not been studied or approved as a legitimate test of skills and which was given to test-takers with a disclaimer stating it would not be used against them, would then form the basis for a promotion decision made *five years later*, does raise a question as to whether it was the true basis for a promotion decision.

Furthermore, Floyd contends that *Lee v. Elmore County Board of Education*, civil action no. 2:70cv3103–T (M.D.Ala.), a longstanding school desegregation case, demonstrates that the reliance on the test was pretextual. In *Lee v. Elmore County*, the defendants had agreed that all changes and modifications to forms used in the hiring process should first be shown to counsel for the plaintiff class and should be held in abeyance for 20 days pending comments or suggestions by the plaintiffs' counsel. While a motion for contempt is the correct way to enforce a consent decree, *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir.2000), the defendants' disregard for the normal procedure, as evidenced by their use of the results of an unapproved test, can be evidence of pretext. *See Bass v. Board of County Com'rs, Orange County, Fla.*, 256 F.3d 1095, 1108 (11th Cir.2001) ("An employer's violation of its own normal hiring procedure may be evidence of pretext.").

However, because Floyd has rebutted only one of the defendants' four proffered reasons, she cannot survive summary judgment; rather, to survive, she must rebut them all. *See Chapman*, 229 F.3d at 1037 n. 30 ("Because the plaintiff failed to rebut one of the three reasons, ... the defendant was entitled to judgment as a matter of law") (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir.1997)); *id.* at 1037 (plaintiff must "rebut 'all of the defendant's proffered nondiscriminatory reasons for it actions' to avoid judgment as a matter of law") (quoting *Combs*, 106 F.3d at 1543); *see also id.* at 1050 (Birch, J., dissenting) (articulating position rejected by majority that, in some cases, where a plaintiff submits evidence of pretext as to one of an employer's stated reasons but not others, the claim should be presented to the jury, because "it is reasonable, where the showing of pretext as to one reason is sufficiently strong as to permit a jury to find that the employer (or its decisionmaker) lacks all credibility, to conclude

---

7. The multiple choice section includes questions that are not particularly suited to a multiple choice format, such as: "Good cooks always: (a) cook by using good tested recipes; (b) cook by adding little bits of this and that until the food tastes good; (c) know by memory what should be used." Plaintiff's brief in response to defendants' motion for summary judgment, filed April 1, 2004 (Doc. no. 40), exhibit 1 (examination).

that summary judgment is inappropriate—even without a specific showing of pretext as to another reason.").

**B.**

 The court adds that Floyd's race-discrimination claim, to extent she relies on Title VII, is time-barred. A charge of discrimination must be filed with the Equal Employment Opportunity Commission within 180 days of the discrete act about which the plaintiff complain. 42 U.S.C.A. § 2000e–5(e)(1). The discrete act which Floyd complains of took place, at the latest, on June 19, 2002, when the school board hired Eason. Floyd did not file a charge with the commission until January 24, 2002, which is longer than the 180 days after Eason was hired. For this reason, the commission dismissed her charge as untimely. This court agrees with the commission that Floyd waited too long to pursue a charge under Title VII.

**C.**

The defendants contend that Floyd is estopped from asserting her discrimination claim because she failed to list it as an asset in two separate bankruptcy proceedings. However, because Floyd's claim fails on its merit, it is unnecessary for the court to determine if the claim would also be barred due to judicial estoppel.

**IV. CONCLUSION**

For the reasons stated above, the defendants are entitled to summary judgment on all claims. An appropriate judgment will be entered.

**JUDGMENT**

In accordance with the opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court as follows:

(1) The motions for summary judgment, filed by defendants on February 6 and March 8, 2004 (Doc. nos. 28 & 32), are granted.

(2) Judgment is entered in favor of defendants Elmore County Board of Education, Bruce Fulmer, Sharmon V. Morris, Sandra Whatley, Johnny Carothers, Kitty Graham, Robert Sims, Larry Teel, and Pres Allinder, in their official and individual capacities, and against plaintiff Alberta Floyd, with plaintiff Floyd taking nothing by her complaint.

It is further ORDERED that costs are taxed against plaintiff Floyd, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.