35366.   JORDAN *et al. v.* HANCOCK.

DECIDED FEBRUARY 8, 1955.

*McDonald & McDonald, John T. Ferguson, Robert R. Forrester,* for plaintiffs in error.

*R. D. Smith, Hugh D. Wright,* contra.

QUILLIAN, J. ■ The demurrers filed by the defendant were not insisted upon either on brief or argument before this court, and must be treated as abandoned.

■ The defendants insist that the verdict was without evidence to support it, because slander is an individual tort, incapable of commission by two or more persons; that the only proof offered by the plaintiff was that the defendants, acting jointly or in concert, slandered him. There is authority for the proposition that slander is an individual tort ordinarily not susceptible to commission by more than one person. Authority for this proposition, that slander is an individual tort ordinarily not susceptible to commission by more than one person, as cited by the defendants, includes *Gilbert* v. *Crystal Fountain Lodge,* 80 *Ga.* 284 (4 S. E. 905, 12 Am. St. R. 255); 53 C. J. S. 243, § 159 b; 33 Am. Jur. 210; 26 A. L. R. 2d 1032.

However, in the case at bar, the petition alleges and there was some evidence, that the defendants entered into a conspiracy to falsely defame him, so that each of them acted with the authority and at the behest of the other. For instance, a witness for the plaintiff, M. J. Vickers, testified: "My name is M. J. Vickers and I am employed by National Life Insurance Company, and have been employed by them since May 15. I was employed by the Jordan Furniture, but I don't remember the exact date I started to work with them. It was sometime in 1950. I worked for them almost three years. Yes, I have had conversations with Wendell and Forest Jordan with reference to C. E. Hancock, as follows: I had been to Atlanta and had an operation and when I got back, I went out to get some business straight between me and Jordan Furniture Company. Forest Jordan made the statement that they had enough on C. E. Hancock to put him in the penitentiary for 20 years. Wendell Jordan said that he would see that he didn't ever work any more in Tifton. They were together when these statements were made."

In the case of *Lanham* v. *Keys,* 31 *Ga. App.* 635 (121 S. E. 856 (1)), it is written: "Assuming that the doctrine of respondeat superior is not applicable to an action for slander (*Ozborn* v. *Woolworth,* 106 *Ga.* 459, 32 S. E. 581; *Behre* v. *National Cash Register Co.,* 100 *Ga.* 213, 27 S. E. 986, 62 Am. St. R. 320; *Southern Ry. Co.* v. *Chambers,* 126 *Ga.* 404, 55 S. E. 37, 7 L. R. A. (N.S.) 296), one who has not uttered slanderous words may nevertheless be liable therefor if they were uttered by another in furtherance of a conspiracy to which he was a party. 25 Cyc. 434. The conspiracy may be established by showing that both parties were present when the slanderous words were uttered, and that their utterance by one of the parties was with the consent of the other and in pursuance of a common design and purpose.

(a) Where the party uttering the slanderous words is at the time acting as an employee of a mercantile establishment in the discharge of a duty to detect shoplifters and point them out to a coemployee in authority over him, who makes such disposition of the matter as he sees fit, and where the employee first referred to accosts, in the store where they are employed, a customer who has been detained by the coemployee for some purpose, and, in the latter's presence, publicly accuses the customer of larceny, and the coemployee stands by and makes no objection thereto, the inference is authorized that they are acting in pursuance of a common design and purpose, and that slanderous utterances made by one of the parties are made as a result of a conspiracy from which both of the parties are liable."

The defendants earnestly urge that, because the defamatory words alleged in the petition to have been spoken by the defendants and those of which plaintiff offered proof were not of identical or substantially the same verbiage, there was a variance between the allegations of the petition and the evidence. In this connection, the defendants bring to our attention as authority for their position 2 A. L. R. 370. The rule prevailing in this State is that pronounced in *Van Gundy* v. *Wilson,* 84 *Ga. App.* 429 (5) (66 S. E. 2d 93): "Where, in an action for slander, words used convey practically the same meaning as the words declared upon, the variances will be held to be immaterial."

The defendants finally predicate their contention that the ver-

dict was not supported by the evidence upon the proposition that the record reveals without dispute that the words spoken by the defendants concerning the plaintiff's honesty and integrity came within the category of privileged communications not actionable under the law. Code § 105-709; *Cochran* v. *Sears, Roebuck & Co.*, 72 *Ga. App.* 458 (34 S. E. 2d 296) ; *Whitley* v. *Newman*, 9 *Ga. App.* 89 (4) (70 S. E. 686).

The *Whitley* case, supra, so far as the rules as to privileged communications are concerned, simply holds: "Statements in response to inquiries as to another person, when the inquirer is one naturally interested in his welfare, are privileged. They are statements made in the performance of a private moral duty, within the purview of the Civil Code (1910), § 4436, par. 2." In the latter case a wife elicited information of the defendant concerning an alleged shortage in the accounts of her husband. She was, on account of the marital relationship, entitled to know the facts concerning which she elicited information of the defendant.

In *Cochran* v. *Sears, Roebuck & Co.*, supra, the communications were patently privileged, being made in the regular course of a business between officials of a business institution engaged to determine the qualifications of employee personnel, and to keep each other informed of pertinent facts necessary to carry out and facilitate the duties committed to them by their common employer.

If reports of merchants made in good faith to each other in reference to the character and conduct of prospective employees are to be regarded as privileged communications, limitations of the rule under which such communications are privileged must be definitely defined; for the right to publish defamatory matter should, in the interest of society, be closely guarded, and the rule under which one claims the privilege to do so strictly construed.

In the instant case, the information of a defamatory nature in reference to the plaintiff's character was given by one of the defendants to the wife of another merchant who contemplated offering him employment. Nothing in the record indicates that the wife had any connection with her husband's business, or was commissioned by him to elicit or receive on his behalf any information concerning the plaintiff. In such circumstances, no

agency of the wife to act for her husband appearing, the defendants were not protected in publishing to her any statement that might otherwise be held privileged.

Moreover, under the pleadings and proof in this case, there was an issue of fact as to whether the communication referred to was made maliciously with conscious knowledge that it was false, in which case there would be such abuse of the privilege claimed as to deny to the defendants the right to claim its protection from liability. Code § 105-710; *Wilson* v. *Sullivan*, 81 *Ga.* 238 (1) (7 S. E. 274).

If a communication is what is generally termed absolutely privileged under our law, even if the publication of slanderous matter concerning another is malicious and false, there can be no recovery. But the privilege relied upon by the defendants in this case does not fall within that category.

The evidence supported, though it did not demand the verdict returned by the jury.

Ground 4 of the amended motion for new trial excepts to the admission of a portion of the plaintiff's testimony:. "Q. Prior to the termination of your employment, did you find it necessary to make any reports to any official of Jordan Furniture Company about the conditions there? A. I went to Waycross to see Mr. Mack Jordan. Q. Who is Mr. Mack Jordan? A. The father of Wendell and Forest Jordan. Q. Why did you find it necessary to go? Q. Mr. Hancock, why did you find it necessary to go to Waycross to talk to Mr. Mack Jordan about the conditions at Jordan Furniture Company? A. Mr. Jack Eason was keeping the books and M. J. Vickers was, and we saw the merchandise was slipping out of there."

The objection urged to this evidence was that it was immaterial and irrelevant; that neither Mack Jordan nor the Jordan Furniture Company were parties to the case, and because the evidence did not have any bearing upon the case.

The quoted testimony, taken alone, is not entirely understandable. When considered with other evidence it was clearly relevant and material to the issue in the case. The plaintiff contended that he had been slandered by statements made by each of the defendants to the effect that he had failed to account for and appropriated to his own use certain funds arising from the

sale of merchandise of his employer, Jordan Furniture Company, in which the defendants were partners.

It is contended that the defendant Forest Jordan's motive in entering into the conspiracy with the defendant Wendell Jordan was to cast suspicion upon the plaintiff in order to conceal the fact that he had himself misappropriated the firm's merchandise and money. In the plaintiff's testimony there were other allusions connecting and rendering understandable the testimony to which the objection was directed.

The testimony was also relevant to show his good faith by reporting the matter therein referred to an official of the furniture company.

Ground 5 of the amended motion excepts to the admission of evidence. The ground does not set out or otherwise disclose the evidence objected to; consequently it is so incomplete as to present no question for the consideration of this court.

Ground 6 complains that the court permitted the plaintiff, over the timely objections of the defendant to testify: "Q. Can you recall, Mr. Hancock, any instances where sales were made by Forest Jordan and entry was not made on the books? A. Dr. Winston bought a refrigerator that was shipped to Pennsylvania. Q. Do you know the amount of the sale? A. Three hundred dollars. Q. State by whom that sale was made. A. Forest Jordan. Q. Do you know what was done with the money? A. Forest got it. Q. Do you know of any other instances? A. Yes sir, Mrs. Ben Whitehurst at Sparks. Q. How much was this sale? A. $1,000.00. She paid $500.00 cash and gave a note for $500.00. Q. Do you know whether or not that transaction was entered on the records of the company? A. I don't think it was."

The evidence was relevant and material to the issues of the case. *Ginn* v. *City of Atlanta*, 73 *Ga. App.* 162 (i, j) (35 S. E. 2d 777).

The objection was not directed to the testimony in reference to the contents of the books alone, but to the testimony as a whole, some of which we have in this opinion held to be admissible. The Supreme Court and this court have repeatedly held that, "where evidence is objected to in its entirety, some portion of which is admissible, such objection is not well taken though

some of the evidence may be inadmissible." *Johnson* v. *State*, 146 *Ga.* 190 (2) (9T S. E. 42); *Bennett* v. *State*, 49 *Ga. App.* 804 (1) (176 S. E. 148); *Jones* v. *Blackburn*, 75 *Ga. App.* 791 (3) (44 S. E. 2d 555).

For the reasons given this ground shows no error.

Ground 7 complains that, over the defendants' timely objection, the plaintiff was permitted to testify: "Q. Mr. Hancock, what church do you belong to? A. Corinth Free Will Baptist Church down at Brookfield. Q. What office do you hold, or what are your duties in your church? A. I am president of the league, and secretary and treasurer of the Sunday school. Q. How has the statements affected your relationship with the church? Q. What has happened Mr. Hancock, in your church relationship recently, if anything at all? A. They asked me to resign. Q. Just tell what has happened to you with regard to your church affiliations? A. They just asked me. . . Q. Q. Mr. Hancock, just tell the jury what happened between you and your church? A. Gentlemen of the jury, the church people told me . . . I lost my job ' . . . my friendship with all the brothers and sisters in the church."

The objection to this evidence was "because the question called for a conclusion of the witness, and because it was not shown what caused the relationship between the witness and the church to be severed, and on the further grounds that the testimony is irrelevant and immaterial, and any trouble the witness might have had with the church has no bearing upon the case."

It will be observed that, contained in the testimony objected to, are several direct statements of fact, such as that the plaintiff was a member of a named church, that he held certain offices in the church, and that his connection with the church had been severed.

Under authority of *Bass* v. *African Methodist Episcopal Church*, 155 *Ga.* 57 (8) (116 S. E. 816), it was permissible for the witness to testify he was a member of and held an office in the church.

The objection interposed was to the testimony in bulk or in its entirety, as a conclusion of the witness, though a major part of it was not subject to that criticism. For this reason the objection is not well taken. Moreover, the objection is predicated

upon the contention that the testimony was a conclusion upon the assertion that it was not shown what caused the relationship between plaintiff and his church to be severed; and the witness had directly testified that the defamation of his character by the defendants resulted in his expulsion from the church. Verbatim his testimony was: "I belong to the Free Will Baptist Church. They did not expel me without trying me, for they don't try you in the church. They did not make any investigation. They dismissed me on what Mr. Jordan had told them."

The rule is that objections interposed are waived where other evidence of the same nature and import is admitted without objection. *Simmons* v. *State*, 34 *Ga. App.* 163 (128 S. E. 690). Had the objection to the evidence been properly presented, its admissibility might have been doubtful. *Sheftall* v. *Central of Ga. Ry. Co.*, 123 *Ga.* 589, 598 (51 S. E. 646).

The 8th ground complains that a witness for the defendant was not permitted to answer certain questions. The ground does not set out what the defendant expected to prove by the witness or what he would have testified had he been permitted to answer the questions. The ground, being incomplete for this reason, raises no question for consideration by this court. *Hawkinsville Bank &c. Co.* v. *Walker,* 99 *Ga.* 242 (25 S. E. 205) ; *Dixie Freight Lines* v. *Transportation Inc.*, 53 *Ga. App.* 832 (187 S. E. 281).

The 9th ground of the motion for new trial is without merit for the reasons given in this opinion in passing on the general grounds of the motion.

The 10th ground complains that the court denied a motion for mistrial based upon the following facts: "Movants contend that while Forest Jordan, one of the defendants, was testifying on cross-examination by counsel for plaintiff, that the court of its own volition and without motion so to do made by the attorneys for plaintiff and without objections to the evidence submitted by counsel for plaintiff, uttered in a voice magnified by a loud speaker the following words: 'Now, Mr. Witness, don't get smart —answer the questions intelligently.' Immediately prior to the utterances of such words by the court, questions were propounded to Forest Jordan,. and answered by him as follows: Q. You can see that credit was given by the balance on the receipt? A. I can see $91.05. Q. Look at the date the credit was given, what

date is that? A. February 11th. Q. February 11th? A. Yes sir. Q. That's a two? A. Yes sir. Q. Mr. Witness, look at that figure? A. I can see, I got good eyes. Q. You can tell that it is a "2" and not a "12" without looking at it? A. I don't have to look at it, I know it is a "2". Q. You can tell that it is a "2" and not a "12" without looking at it? A. I know it's a "2". Q. What does the figures one and two written together, what does that normally represent? A. One and two is three, or you could subtract it, say one from two leaves one. Q. Does the figures one and two written together usually mean February or December? A. Like I said, you can add one and two and get three, subtract one from two and get one, or you can add one and three and get four.'"

Counsel for defendants did then and there urge the objections, as follows: "We insist, Your Honor, that the statement is prejudicial, and we request Your Honor to declare a mistrial in this case, we respectfully submit that Your Honor should withdraw your statement that the witness is getting smart." The judge stated that he would withdraw his statement aforesaid, but refused to grant a mistrial.

The view this court takes of the matter from reading the record is that the witness's answers were facetious or what is termed in common parlance "smart." This being true, the court properly instructed the witness as to his conduct. This court, of course, cannot understand or know without having had the opportunity of observing the witness whether or not the witness was seeking to be co-operative or evasive in his answers to the questions propounded to him. The trial court had the opportunity to observe the witness, and it is presumed that in an abundance of precaution he withdrew his remark to the witness, and he would not have made it had he not been justified by the nature of the witness's testimony and his manner of testifying.

Ground 11 relates that, in arguing the motion for new trial, made on the ground indicated in the next preceding division of this opinion, one of the plaintiff's counsel remarked: "I think it depends, Your Honor, on whether the witness is inclined to be smart."

The defendants moved for a mistrial on the ground that the remark was improper and prejudicial. To this we cannot agree.

The very question that the court was passing upon was whether the witness's answers were facetious or "smart," and whether the court had improperly characterized them as of that nature.

The 12th ground complains that the court charged the jury as follows: "I charge you, gentlemen, that the burden is on the plaintiff usually to carry the burden of his allegations set out in the petition by a preponderance of the evidence, but anything admitted in the petition, the petitioners or plaintiff, does not ·have to prove it. You take it as a matter of fact and pass upon the issues involved."

There were admissions in the pleadings as to the words spoken, the admissions being contained in the answer of each defendant, as follows: The answer of Wendell Jordan, paragraph 10, contains the averment that "this defendant stated to Juanita Sumner that C. E. Hancock had been found to have been stealing and that he expected to prosecute him in Coffee County for same; that such statement was in response to an inquiry made in accordance with the custom prevailing among the merchants of Tifton, Georgia and was privileged, and was and is true."

In paragraph 10 of the answer of Forest Jordan, it is alleged "that it is true that on or about the 1st day of April Mrs. Cato Knight, who is employed by Knight's Furniture Company, called this defendant inquiring as to the credibility and reliability of the plaintiff and also inquired as to the experience which this defendant had had with the plaintiff, and in response to such inquiry that this defendant informed Mrs. Knight that the plaintiff herein had been short on several accounts of customers and that he did not consider him an honest and reliable person and was not fit for employment."

3. Ground 13 complains that the court charged the jury as follows: "I charge you that as in this case, the defendants made a defamatory or slanderous remark about the plaintiff and it is admitted by them, the burden is put on them to prove the truth of the slanderous statement that they have admitted, or that either one has admitted." This charge is excepted to on the ground that the words, "I charge you that as in this case the defendants made a defamatory or slanderous remark," constituted an intimation of opinion by the court that the defendants had made a slanderous remark about the plaintiff.

Exception was also taken to the words contained in the charge, "or that either of them admitted," for the reason that it amounted to instructing the jury that the plaintiff should recover of both defendants, without proof of conspiracy, and the evidence showed a slanderous remark had been made of or concerning by either of the defendants.

The charge lacked a little in clarity, and the word "slanderous" was loosely used, but, when considered in its context, did not intimate an opinion that the defamatory statements made by the defendant were slanderous. In immediate connection with the instructions complained of, the court charged: "Of course, gentlemen of the jury, if you find that the statements which these defendants made were true, you would, of course, render a verdict in favor of the defendants without regard to whether or not such statements were privileged. It always being true that the truth constitutes justification."

The jury could hardly have understood that the judge intended to inform them that the words spoken by the defendants were slanderous, and almost in the same breath instruct them that, if they found that they were true, as contended by the defendants, the plaintiff could not recover.

The charge complained of was error for the reason that it did instruct the jury, without qualification, that the burden was upon each of the defendants to prove the derogatory and actionable words that the other defendant admitted having uttered of and concerning the plaintiff.

The defendants filed separate pleas of justification, each defendant protesting in his separate plea the truth of the statements made by him.

This error was obviously a hurtful one requiring reversal, for the reason that it cast upon each defendant a heavier burden in proving his plea of justification than the law required.

We have studied the court's entire charge carefully in order to determine whether the error was cured by some other instructions to the jury. Particularly, with this in view, were the instructions given on the subject of conspiracy considered. The court on that subject simply informed the jury in reference to the effect that finding against the plaintiff's contention that there was a conspiracy between the defendants would have on the defendant Wendell Jordan's plea to the jurisdiction.

The court did not instruct the jury that, if the plaintiff failed to prove the alleged conspiracy between the defendants to slander him, the result would be that neither defendant would be liable for slanderous utterances alleged and proved to have been made by the other.

*Judgment reversed. Felton, C. J., and Nichols, J., concur.*