A95A0782. DEE et al. v. SWEET et al.
(460 SE2d 110)

RUFFIN, Judge.

Defendants William Dee and Arthur McMahon appeal from the jury's verdict in favor of plaintiffs Robert Sweet and Ralph Wright, and the denial of their motion for judgment notwithstanding the verdict.

After the acrimonious termination of the parties' business relationship, Sweet and Wright sued Dee and McMahon asserting various claims including violations of the Georgia Racketeer Influenced & Corrupt Organizations Act ("RICO"), fraud, libel, and tortious interference with commissions. According to the amended complaint, Dee and McMahon operated McMahon-Dee, Inc. ("MDI"), an executive search and strategic management business. Sweet and Wright alleged that when they joined MDI, they were purportedly given executive positions with the company and sold shares of its stock. Dee and McMahon owned MDI's remaining outstanding shares. In a December 1991 shareholders meeting, Dee accused Sweet and Wright of poor job performance, announced their MDI shares were worth only $0.377 each, and threatened them with discharge. McMahon also later threatened them with discharge. A few days later, police officers arrived at MDI's offices and informed Sweet and Wright that they were trespassing and gave them ten minutes to collect their belongings and leave. Dee also swore out warrants for Sweet and Wright's arrest on charges of felony theft of computer equipment.

Sweet and Wright subsequently sued Dee, McMahon, and Allied Research Corporation ("ARC"), an independent corporation involved in strategic planning which Dee allegedly represented as a "division" of MDI. On the eve of trial, Sweet and Wright dismissed ARC and

several of their causes of action against Dee and McMahon. At the close of the plaintiffs' case, Dee and McMahon moved for a directed verdict on the claims for attorney fees, arguing without elaboration that the evidence was insufficient to permit the jury to award attorney fees. They also sought a directed verdict on the RICO claim on the ground that the evidence was insufficient to prove a pattern of organized criminal activity. The court denied the motions.

Dee and McMahon subsequently renewed and clarified their motion on attorney fees, arguing that the failure to allocate attorney fees to reflect the time expended in defense of a counterclaim and to distinguish between the claims dismissed prior to trial and those remaining was fatal. They did not challenge the sufficiency of the evidence offered to support the claim for attorney fees. The court denied the motion as to the attorney fees on the RICO claim, finding that allocation of the fees was not required.

The jury returned a special verdict awarding Wright $30,000 and Sweet $81,000 for fraud, Sweet $80,000 from McMahon for libel, and Wright $17,050 from Dee and McMahon for tortious interference with commissions. It also awarded both Sweet and Wright $1 in actual damages on the RICO claim and $258,360 as attorney fees, costs of investigation, and costs of litigation reasonably incurred. The jury listed the predicate acts underlying this claim as theft by deception and perjury.

Dee and McMahon unsuccessfully moved for judgment n.o.v. as to the jury's award of attorney fees under the RICO claim, as well as the verdict in favor of Sweet and Wright for fraud, and in favor of Sweet for his libel claim against McMahon.

1. Dee and McMahon argue that the evidence was insufficient to support a recovery under the RICO statute, OCGA § 16-14-4, because no proof of their connection to organized crime was presented. Because it is not necessary to demonstrate a nexus with organized crime to prevail on a RICO claim, this enumeration is without merit. *Larson v. Smith*, 194 Ga. App. 698 (391 SE2d 686) (1990).

2. Dee and McMahon contend that the trial court erred in denying their motion for judgment n.o.v. as to Sweet and Wright's claim for attorney fees under the RICO statute, OCGA § 16-14-6 (c). They contend that (a) the evidence was insufficient to support the award because Sweet and Wright failed to present proof allocating the amount of attorney fees incurred in pursuing the RICO claim; (b) even if allocation evidence was not required, the failure to introduce testimony that the fees were reasonable and billing statements or expenses from January 1, 1994, through the trial's conclusion, made the award erroneous; and (c) the nominal award of $1 in damages was insufficient to support the award for attorney fees.

(a) Sweet and Wright were not required to introduce evidence

of allocation. The Georgia RICO statute mandates that prevailing parties receive awards of "attorneys' fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred." OCGA § 16-14-6 (c). The method for establishing those amounts, however, has not been affirmatively resolved.

Dee and McMahon rely on law interpreting other Georgia statutes allowing attorney fees. These cases require litigants to prove the actual amount of the fees incurred in prosecuting the successful claim. *Augusta Tennis Club v. Leger*, 186 Ga. App. 440 (5) (367 SE2d 263) (1988) (interpreting OCGA § 44-7-35 (c)); *Cherokee Ins. Co. v. Lewis*, 204 Ga. App. 152 (2) (418 SE2d 616) (1992) (interpreting OCGA § 33-7-11 (j)); *Southern Cellular Telecom v. Banks*, 209 Ga. App. 401 (433 SE2d 606) (1993) (fees awarded on fraud claim). These statutes authorize attorney fees upon proof of specific bad acts.[1] Thus, in most cases, no problem of separating out the various causes of action would arise.

In contrast, like its federal counterpart, the Georgia RICO statute has an expansive reach. It applies to persons who engage in a "pattern of racketeering activity." OCGA § 16-14-4 (a). It defines racketeering activities as committing, attempting to commit, or soliciting, coercing or intimidating another to violate over 30 listed laws. OCGA § 16-14-3 (9). At least two such violations must be proved to establish a "[p]attern of racketeering activity." OCGA § 16-14-3 (8). The requisite predicate acts in a RICO claim may theoretically also stand alone as separate causes of action. As a practical matter, the various causes of action involved in a RICO case may be so inextricably intertwined that allocation of attorney fees between them is impossible or incomprehensible. Because Georgia's RICO statute is "modeled upon and closely analogous to the federal RICO statute[,]" we have looked to the federal decisions for guidance in the absence of decisions from Georgia courts interpreting the statute. *Martin v. State*, 189 Ga. App. 483, 485 (2) (376 SE2d 888) (1988).

Under such federal decisions, when a common core of facts provides the basis for several claims, each derived from related legal theories, attorney fees on all the related claims are permitted. *Lerman v. Joyce Intl.*, 10 F3d 106, 114 (3d Cir. 1993). When distinctly different claims are based upon separate facts and theories, however, no fee should be awarded for services on unsuccessful claims. Id. Accordingly, in light of the practical difficulties required in allocating attorney fees to specific claims in RICO cases, we will not require it unless the unsuccessful claims and those not receiving awards of attorney

---

[1] For example, OCGA § 44-7-35 (c) applies to landlords who unlawfully withhold security deposits, and OCGA § 33-7-11 (j) reaches insurers who in bad faith refuse to pay an insured loss.

fees are "distinctly different claims for relief . . . based on different facts and legal theories." Id. (quoting *Hensley v. Eckerhart*, 461 U. S. 424 (103 SC 1933, 76 LE2d 40) (1983)).

The predicate acts underlying the RICO claim at issue were theft by deception and perjury. They related to defendants' actions with regard to the failure to pay commissions earned by the plaintiffs, questions of stock ownership, and false swearing on the arrest warrant. These actions are sufficiently within the ambit of operative facts alleged in the unsuccessful slander and intentional infliction of emotional distress claims and the successful claims of fraud, libel, and tortious interference with commissions, for which attorney fees were not awarded, to preclude the necessity of allocation.

(b) The record reveals that Dee and McMahon did not challenge the sufficiency of the evidence offered to support the claim for attorney fees in their motions for directed verdict. "OCGA § 9-11-50 (b) allows the device of a motion for judgment notwithstanding the verdict to be used when a motion for directed verdict does not end a trial and it proceeds to verdict. It is narrow, however, and does not permit reopening the case for new legal issues which are thought of retrospectively, with hindsight. It provides, however, a post-verdict opportunity for a 'determination of the legal questions raised by the motion (for a directed verdict).' If upon reflection the trial judge determines that the motion for directed verdict was valid, the judge is to set aside the verdict and the original judgment and enter a new judgment 'in accordance with (the) motion for directed verdict.' It is patent, then, that the j.n.o.v. must be based on grounds raised in the motion for directed verdict initially, for it is in effect only a new ruling on a renewed motion." *Famiglietti v. Brevard Med. Investors*, 197 Ga. App. 164, 166 (2) (397 SE2d 720) (1990). In light of this rule, we need not review the evidence offered to establish the reasonableness of the attorney fee award or Sweet and Wright's failure to introduce billing statements or expenses from January 1, 1994, through the trial's conclusion on February 16, 1994.

(c) Dee and McMahon offer no applicable authority for the proposition that the $1 damages award was insufficient to support the award of attorney fees, and we find none. The RICO statute mandates such awards to "[a]ny person who is injured by reason of any violation of Code Section 16-14-4. . . ." OCGA § 16-14-6 (c). This requirement is not contingent upon the amount of damages awarded.

3. In their sixth enumeration of error, Dee and McMahon contend the trial court erred in denying their motion for judgment n.o.v. as to the jury's award of damages on Sweet and Wright's claim for fraud and deceit. The claim was based on Dee and McMahon's failure to issue stock certificates in MDI even though it was uncontroverted that Sweet and Wright paid for the shares. Dee and McMahon do not

contend there was insufficient evidence that they committed fraud, rather, they argue there was insufficient evidence to support an award of damages. We disagree.

" 'There are two measures of damages in fraud cases. In one case is the case where the person receives something of value but it is not of the value that it was represented to be, and in this case the party may elect to keep the thing of value and sue for the difference. Now this is not the case [here], because the plaintiff[s] in this case never received anything; therefore . . . [plaintiffs have] already made an election and . . . [their] election has been to recover the purchase price of the stock.' " (Emphasis omitted.) *Rauch v. Shanahan*, 125 Ga. App. 782, 784-785 (1) (189 SE2d 111) (1972). Although Dee and McMahon argue in their appellate brief that the purchase price of the stock was lower than the damages awarded, they cite no portion of the record or any authority supporting this contention. See Court of Appeals Rule 27 (c). Rather, the evidence referenced by Sweet and Wright showed that Sweet paid MDI $90,000 and that Wright paid MDI $30,500 for purported shares of MDI stock. The jury awarded Sweet $81,000 and Wright $30,000 on their fraud claims. Since the measure of recovery was the purchase price and their evidence supported the jury's award, the trial court did not err in denying Dee and McMahon's motion for judgment n.o.v.

4. In the last enumeration of error, McMahon contends the trial court erred in denying his motion for judgment n.o.v. as to the jury's verdict against him on Sweet's claim of libel. Specifically, McMahon argues that because Sweet did not introduce any evidence of any document written by him which could be construed as libelous, the trial court erred in denying the motion. But the record shows that Sweet's libel claim was based on the allegation of conspiracy to libel. Under such claim, McMahon could be held liable for the libelous statements published by his alleged co-conspirator, Dee, in furtherance of a conspiracy to libel. See *Jordan v. Hancock*, 91 Ga. App. 467 (2) (86 SE2d 11) (1955).

"Civil conspiracy is an act which is by its very nature covert and clandestine, and usually not susceptible of proof by direct evidence. Concert of action, amounting to conspiracy, may be shown by circumstantial as well as direct evidence. It is not necessary to prove an express agreement or compact among the wrongdoers; their common design may be inferred from the nature of the acts done, the relation between them, their mutual interests in the matter, and other circumstances." (Citations and punctuation omitted.) *First Fed. Sav. Bank v. Hart*, 185 Ga. App. 304, 305 (2) (363 SE2d 832) (1987).

In support of his claim for libel in this case, Sweet relied on a letter written on MDI stationery by Dee to a Fulton County police detective accusing him of theft. The letter indicates that prior to

sending the letter, McMahon and Dee discussed how to address the various acts of alleged theft and eventually decided to seek advice from their attorney, upon whose advice the letter was sent. Considering these facts, the nature of the relationship between McMahon and Dee as business partners, their mutual interest in the matter, along with all the reasonable deductions therefrom, in a light most favorable to the verdict, we do not find that the only reasonable conclusion was that there was no conspiracy to libel. *Lister v. Scriver*, 216 Ga. App. 741 (1) (456 SE2d 83) (1995). Accordingly, the trial court did not err in denying McMahon's motion for judgment n.o.v. as to this claim.

*Judgment affirmed. Beasley, C. J., and Pope, P. J., concur in judgment only.*

DECIDED JULY 14, 1995 —

*McKenney & Froelich, William J. McKenney, David M. Kupsky*, for appellants.

*Kilpatrick & Cody, Matthew H. Patton, James F. Bogan III*, for appellees.