A97A2103. MADDOX v. SOUTHERN ENGINEERING COMPANY et al.
A97A2104. CARROLL COUNTY WATER AUTHORITY v. MADDOX.
(500 SE2d 591)

RUFFIN, Judge.

H. Gilbert Maddox, Jr. sued Southern Engineering Company ("Southern Engineering"), Carroll County Water Authority (the "Authority"), Still Water Plantation, Ltd. ("Still Water") and other defendants (collectively the "defendants") seeking damages for fraud and under Georgia's Racketeer Influenced & Corrupt Organizations Act ("RICO"), OCGA § 16-14-1 et seq. The trial court dismissed Maddox's complaint for failure to state a claim. In *Maddox v. Southern Engineering Co.*, 216 Ga. App. 6 (453 SE2d 70) (1995) (*"Maddox I"*), we affirmed the trial court's dismissal of Maddox's fraud claim, but reversed the dismissal of his state RICO claim. On remand, Maddox made a second amendment to his complaint to include individual members of the Authority's board of directors at relevant times to his lawsuit. The defendants moved for summary judgment claiming, inter alia, that Maddox lacked standing to assert a RICO claim because there was no causal connection between the alleged RICO violations and his injury and because Maddox had no compensable damages under Georgia law. The trial court granted summary judgment to the defendants and Maddox appealed.

In Case No. A97A2103, Maddox appeals the trial court's order granting the defendants' motion for summary judgment. In Case No. A97A2104, the Authority appeals the denial of its petition that Maddox post a bond pursuant to OCGA § 50-15-2. For reasons which follow, we affirm the trial court's grant of summary judgment, and in light of this, we conclude that the issue presented in Case No. A97A2104 is moot.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the

court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other . . . [disputations] of fact are rendered immaterial. [Cit.] A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). On appeal from a trial court's grant of summary judgment, this Court conducts a de novo review of the evidence. *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (437 SE2d 832) (1993).

Viewed in the light most favorable to Maddox, the nonmovant, the record shows that the Authority contracted with Southern Engineering to provide necessary technical support for obtaining a permit for the construction of a dam and reservoir. Snake Creek, located in Carroll County, was selected from 16 different sites as the site for the proposed dam and reservoir.

As part of the permit application for the dam and reservoir, the Authority and Southern Engineering submitted permit applications along with the required documentation to the United States Army Corps of Engineers ("Corps") and various state agencies. See OCGA § 12-5-376.

Maddox, who owns property below the proposed dam site on Snake Creek, and six tracts of land on Whooping Creek, vigorously opposed the proposed Snake Creek site. According to Maddox, the construction of the dam and reservoir upstream from his property would have a negative impact on his land. Maddox submitted a feasibility study to the Corps and the state agencies that concluded Whooping Creek was a more feasible alternative. Maddox also informed the Corps and the relevant state agencies that the Authority and Southern Engineering made material misrepresentations in their permit application.

In his deposition, Maddox testified that the defendants made the following misrepresentations: the population of Carrollton, Villa Rica and Bowden were overstated; the drinking water demands of Carroll County were overstated; the amount of water that Carroll County could supply was understated; the completion date for Sharpe Creek Reservoir, an alternative water source, indicated it would not be

available for several years, but in fact it would be completed much earlier; the number of alternative water sources was misstated; that a large reservoir is not feasible on Whooping Creek because it would flood a portion of Georgia Highway 5 and a railroad line; the Authority refused to acknowledge the existence of the petroleum pipe under the proposed Snake Creek site; and numerous other misrepresentations made in an effort to establish a reservoir in Carroll County.

After gathering information and independently verifying reports and studies submitted for the record, and after consultation with state and federal agencies involved in the "commenting process," the Corps determined the Snake Creek, Site A, was the least environmentally damaging practicable alternative to meet the basic project purpose. Although the land near Whooping Creek was studied as an alternative site, it was not selected due to cost and other considerations, and was no longer actively considered upon selection of the Snake Creek site. On August 15, 1994, the Corps issued permits and certifications for construction of the reservoir at Snake Creek.

Maddox argues that the defendants violated OCGA § 16-10-20 by knowingly and willfully submitting false statements to the state agencies, thereby causing him to suffer a depreciation in property value. He contended that these violations constituted predicate acts necessary to establish a pattern of racketeering activity under RICO. See OCGA § 16-14-3 (8) and (9). Maddox also contends that his damages consist of "[t]he stigma of being downstream from a 62-foot or approximately thereof earthen dam and the effects it would have on the riparian rights to the water. Also the alterations in the flood plains that occurred and mandation [sic] of flood insurance, other factors . . . have basically made the property almost impossible to sell."

*Case No. A97A2103*

1. On appeal, Maddox argues that the trial court failed to adhere to our ruling in *Maddox I* by concluding that he did not have standing to assert the RICO claims. We disagree.

In *Maddox I*, the issue before us was the sufficiency of his complaint, i.e., whether or not Maddox stated a viable claim. We determined that the predicate acts underlying Maddox's RICO claim were not based on fraud as the defendants alleged, but rather were based on violations of OCGA § 16-10-20, which prohibit the making of false statements to any state governmental department or agency. We consequently ruled that such statutory violations can constitute the predicate acts underlying his claim of racketeering activity. Id. at 7-8. We did not address the issue of whether there was any evidence supporting Maddox's allegations. More specifically, we did not address

whether the substance of the defendant's misrepresentations entitled Maddox to relief because he had not alleged what specific false statements were made to the state agencies that proximately caused his loss. Id. at 8. Consequently, this issue is ripe for our consideration.

Upon consideration of the alleged statements, we agree with the trial court that Maddox lacked standing to pursue his RICO claim. Georgia's civil RICO statute provides that: "Any person who is injured *by reason of* any violation of Code Section 16-14-4 shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages." (Emphasis supplied.) OCGA § 16-14-6 (c). In this instance, Maddox alleged that defendants were liable to him for RICO violations because they repeatedly violated OCGA § 16-10-20 by making misrepresentations to the state agencies involved in the permitting process.

Maddox's deposition testimony established that he relies on two fundamental allegations in support of his RICO claim: (1) that the defendants knowingly made misrepresentations to various state agencies in violation of OCGA § 16-10-20, and (2) that the diminution of his property value was a direct result of these misrepresentations. In light of these allegations, we must determine whether Maddox's depreciated property value occurred "by reason of" the defendants' misrepresentations.

Although there is no Georgia authority addressing this issue, and because the state RICO act is " 'modeled upon and closely analogous to the federal RICO statute,' " we will look to federal authority to address this question. *Dee v. Sweet*, 218 Ga. App. 18 (460 SE2d 110) (1995) (physical precedent only). See *Morast v. Lance*, 631 FSupp. 474, 481 (9) (N.D. Ga. 1986), aff'd, 807 F2d 926 (11th Cir. 1987).

Under the federal RICO act, "[t]he language *'by reason of'* . . . imposes a proximate causation requirement on the plaintiffs. [Cits.]" (Emphasis supplied.) *O'Malley v. O'Neill*, 887 F2d 1557, 1561 (11th Cir. 1989). "This means that a private plaintiff who wants to recover under civil RICO must show some injury flowing from one or more predicate acts. A plaintiff cannot allege merely that an act of racketeering occurred and that he lost money. He must show a causal connection between his injury and a predicate act. If no injury flowed from a particular predicate act, no recovery lies for the commission of that act." *Pelletier v. Zweifel*, 921 F2d 1465, 1497 (11th Cir. 1991). In short, the language "by reason of" imposes a proximate causation requirement on the plaintiff. *O'Malley*, supra at 1561.

In *O'Malley*, the plaintiffs were terminated university employees. The plaintiffs brought a federal RICO action against several defendants alleging that the defendants committed mail fraud by concealing the financial condition of the university and submitting

false statements to the United States government in order to obtain funds for the university. The alleged mail fraud constituted the alleged predicate offenses committed by the defendants. The plaintiffs refused to participate in the mail fraud and claimed they were terminated because of their refusal to participate. Id. at 1558-1559. The Eleventh Circuit Court of Appeals ruled that in order to have standing to sue under RICO, the plaintiffs must show "that the defendants' mailing of false reports and statements directly caused them to lose their jobs." Id. at 1561. The court found the plaintiffs merely alleged that the proximate cause of their injuries was the defendants' "decision to fire them for refusing to participate . . . not the mail fraud scheme itself." Id. Importantly, the court added, "[i]t may well be true that the commission of the predicate acts constituted the 'but for' cause of the firings. However, that tenuous a relation between the harm and the predicate acts is not sufficient to confer standing. [Cit.] RICO does not provide a remedy for every injury that may be traced to a predicate act." Id. Similarly, the court stated that the injury must "flow directly" from the predicate acts. Id. at 1562 (citing *Morast,* supra). As a matter of law, "[t]here can be standing to sue and recover only 'to the extent that [the RICO plaintiff] has been injured . . . by the conduct constituting the violation.' [*Sedima v. Imrex Co.,* 473 U. S. 479, 496 (105 SC 3275, 87 LE2d 346) (1985).]" *Morast,* supra at 481.

Accordingly, in order to survive summary judgment in this case, Maddox must show that his injury flowed directly from the defendant's misrepresentations to state agencies, not merely that his injury was an eventual consequence of the misrepresentations or that he would not have been injured but for the misrepresentations. We find no such evidence in the record. Although there is evidence proving that the state agencies knew of the misrepresentations, there is no evidence that the state agencies relied on the misrepresentations. Moreover, even if there was evidence that the state agencies relied upon misrepresentations, there is no evidence that the depreciation in Maddox's property value was anything more than an eventual consequence of the misrepresentations. Accordingly, like the plaintiffs in *O'Malley*, in this case the evidence shows Maddox was not injured as a *direct* result of any misrepresentations, but rather "by reason of" the Corps' decision to issue a permit for the dam and reservoir upstream from his property. Although Maddox may not have been injured but for the misrepresentations, it is clear those misrepresentations were not the proximate cause of his injuries. Thus, the trial court properly granted the defendants' motion for summary judgment because Maddox lacked standing in that there is no evidence to support proximate causation, an essential element of his RICO claim.

In view of our ruling on the issue of standing, we need not

address the remaining 14 enumerations of error.

### Case No. A97A2104

2. Based on our decision in Case No. A97A2103, the enumeration of error raised by the water authority is moot.

*Judgment affirmed in Case No. A97A2103. Case No. A97A2104 is dismissed as moot. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MARCH 20, 1998 —
RECONSIDERATION DENIED APRIL 1, 1998 

*Gary P. Bunch*, for Maddox.

*Webb, Carlock, Copeland, Semler & Stair, Kent T. Stair*, for Southern Engineering Company et al.

*Johnson, Kayne & Penna, Christopher E. Penna, Johnson, Dangle & Parmer, William P. Johnson, Thomas E. Parmer*, for Carroll County Water Authority.