A00A0260. KEEFE et al. v. NORTHSIDE HOSPITAL, INC.
(538 SE2d 61)

BARNES, Judge.

Dennis and Rachel Keefe filed suit to enforce a settlement agreement with Northside Hospital, Inc. and appeal from the trial court's grant of summary judgment to the hospital and the denial of their

---

motion for summary judgment. Because we find the trial court erred in granting summary judgment to the hospital and denying the Keefes' summary judgment motion, we reverse.

On appeal from the grant of summary judgment, this Court conducts a de novo review of the record, construing the evidence and all inferences therefrom in favor of the nonmoving party. *Maddox v. Southern Engineering Co.*, 231 Ga. App. 802-803 (500 SE2d 591) (1998). Viewed in this light, the record shows that the settlement at issue in this appeal relates to injuries Dennis Keefe received during a June 11, 1992 admission to the hospital. After the trial court dismissed the Keefes' complaint for professional negligence against the hospital based upon their failure to comply with OCGA § 9-11-9.1 and this Court affirmed, *Keefe v. Northside Hosp.*, 219 Ga. App. 875 (467 SE2d 9) (1996), the parties entered into settlement negotiations while the Keefes pursued a petition for certiorari to the Supreme Court.

On February 5, 1996, the Keefes' attorney and the hospital's attorney orally agreed to settle the Keefes' claims against the hospital for $25,000. Both attorneys sent letters confirming the settlement the same day. The Keefes' attorney wrote:

> This will confirm that we have this day resolved the above captioned cause of action [*Keefe v. Northside Hosp.*] by settlement. The Defendant Northside Hospital, Inc. has agreed to pay the Keefes the sum of twenty-five thousand dollars ($25,000) to dismiss their case with prejudice, and forbear the seeking of certiorari to the Supreme Court of Georgia.

The hospital's attorney wrote:

> This letter confirms settlement of any and all claims that were or could have been raised as a result of Lawrence Dennis Keefe's treatment at Northside Hospital during his June 11, 1992 admission. We will be forwarding to you our standard settlement package including the Release and Hold Harmless Agreement, Dismissal With Prejudice, Hospital Lien Affidavit and settlement check shortly. . . . As you know, the settlement was with the understanding that Northside Hospital not be required to do any further legal work on this matter. Thus, we could not agree that any petition for cert be filed.

After receiving a release from the hospital, the Keefes' attorney requested that a confidentiality provision be deleted. According to the hospital's attorney, the changes requested by the Keefes' attorney were made, and the attorneys for both parties agreed on the

release language. As a result of the settlement, the Keefes' attorney "abandoned all attempts to seek certiorari to the Supreme Court."

Approximately two months after the settlement was negotiated, the Keefes fired their first attorney and retained a second attorney to conclude the settlement and pursue a legal malpractice action against their first attorney. Because the second attorney was concerned that the Keefes might release their legal malpractice action against their first attorney if they signed the current version of the release, he drafted a revised release and sent it to the hospital's attorney.

Although this revised release simply clarified that the Keefes were not releasing any legal malpractice actions against their first attorney and summarized the parties' contentions in the underlying lawsuit, the hospital refused to accept these revisions and insisted that the Keefes sign the release agreed upon by their first attorney. The revised release included language that the Keefes were releasing the hospital and all parties, other than their first attorney, in connection with Mr. Keefe's June 11, 1992 admission to the hospital.

When the Keefes failed to sign the release insisted upon by the hospital, the hospital stopped payment on the settlement check it had issued and provided to the Keefes' first attorney. After the Keefes settled their legal malpractice claim against their first attorney approximately nine months later, they signed the release insisted upon by the hospital and requested a check for $25,000.

When the hospital refused to abide by the earlier settlement, the Keefes filed suit to enforce it. After the parties filed cross-motions for summary judgment, the trial court granted the hospital's motion and denied the Keefes' motion. In its written order disposing of the motions, the trial court made the following findings:

> (1) That a valid and binding settlement agreement was entered into between the parties on February 5, 1996; (2) That the plaintiffs attempted to renegotiate a portion of the agreement by adding additional language to a release previously agreed upon by the parties; (3) That the language added to the release was material; (4) That defendant had the right to insist on the original language of the release as agreed to; (5) That upon plaintiffs' refusal to sign the agreed upon release, it was appropriate for the defendant to either rescind the agreement or move to enforce it; and (6) Defendant promptly notified plaintiffs of its intention to rescind the settlement agreement and did properly rescind.

The Keefes appeal from this ruling, contending the trial court erred when it failed to enforce their settlement with the hospital and

denied their motion for summary judgment.

We agree with the trial court's conclusion that the parties entered into a valid and binding settlement agreement on February 5, 1996, as do the parties to this appeal. We disagree with the trial court's conclusion that the requested changes to the release were material and authorized the hospital to rescind the settlement agreement.

The changes requested by the Keefes had no impact upon the bargained-for settlement with the hospital, i.e., that in exchange for $25,000, the Keefes would (1) release all claims that could have been brought as a result of Mr. Keefe's June 11, 1992 admission to the hospital, (2) forgo seeking certiorari in the Supreme Court, and (3) dismiss their case against the hospital. Nothing in the language of the original release would have prevented the Keefes from suing their first attorney for malpractice. In *Lackey v. McDowell*, 262 Ga. 185 (415 SE2d 902) (1992), the Supreme Court of Georgia held that: "[o]nly those parties *named* in the release will be discharged by that instrument. By 'named,' we mean being identified either by proper name or such other description as leaves no question of the identity of the party released." (Punctuation omitted; emphasis in original.) Id. at 185. Since the Keefes' first lawyer would not fall within the Supreme Court's definition of a "named" released party in the original release,[1] the revised release, which simply sought to ensure that the Keefes did not somehow release their claims against their first lawyer for legal malpractice, did not expose the hospital to any additional legal work or liability.

As a result, the changes in the revised release and the Keefes' understandable reluctance, based upon advice of counsel, to sign a release without these changes did not authorize the hospital to rescind the settlement. *Stacey v. Jones*, 230 Ga. App. 213, 215 (2) (495 SE2d 665) (1998) (failure to comply with demands to forward check and release by a certain time and date was not grounds for rescission of settlement). Therefore, the trial court erred when it denied the Keefes' motion for summary judgment to enforce the settlement and granted the hospital's summary judgment motion.

*Judgment reversed. Eldridge, Phipps and Mikell, JJ., concur. Johnson, C. J., concurs in the judgment only. Pope, P. J., and Blackburn, P. J., dissent.*

---

[1] The original release did not specifically name the Keefes' first attorney as a released party and the more general description of the parties released was linked to claims arising out of Mr. Keefe's care during his June 11, 1992 hospital admission. Since the Keefes' claims against their first attorney arose out of a different event, namely their first attorney's failure to file an OCGA § 9-11-9.1 affidavit, their first attorney was not a "named" party who would have been discharged by the original release.

BLACKBURN, Presiding Judge, dissenting.

Because Dennis and Rachel Keefe breached the settlement agreement regarding their medical malpractice claims and the settlement agreement was validly terminated thereafter, I believe that the trial court properly granted summary judgment to Northside Hospital. Therefore, I must respectfully dissent from the opinion of the majority.

On appeal, the Keefes contend that, despite the fact that they breached the original settlement agreement which had been fully and completely negotiated by them over a period of three weeks, they should nonetheless be allowed to change their minds after the breach and resurrect the contract which was terminated by Northside Hospital. This the Keefes cannot do.

OCGA § 13-5-8 provides: "A condition, precedent or subsequent, not complied with, insufficiency or failure of consideration, or any act of the opposite party, by which the obligation of the contract has ceased, may be pleaded as a defense." Furthermore, where one party fails to show an adequate legal reason to excuse its nonperformance of contractual obligations, that party cannot recover against the other party under the expressed terms of the contract. See *Clark's Super Gas v. Tri-State Systems*.[2] Therefore, one party cannot breach a contract by refusing to abide by its terms, remain in breach for over a year, and overcome the defense of the other party that the obligations set forth under the contract were terminated and rescinded pursuant to the breach. Accordingly, the Keefes lost the right to enforce the settlement agreement with Northside Hospital when they wilfully refused to satisfy the conditions required by that agreement and Northside terminated same.

The facts of this case are simple and undisputed. From February 5, 1996 to February 21, 1996, the Keefes negotiated a settlement agreement with Northside Hospital. During this time, the Keefes fully negotiated their rights, suggesting certain changes to confidentiality provisions in Northside Hospital's standard settlement package which were incorporated into the agreement. The Keefes, however, after fully reviewing the proposed agreement, requested no changes to the release clause contained therein. By February 21, 1996, the parties entered into the fully negotiated and binding agreement, which included Northside Hospital's general release clause.

The Keefes agreed to settle their medical malpractice claim against Northside Hospital for the sum of $25,000. In return, the Keefes consented to sign Northside Hospital's standard settlement package with the incorporated changes to its confidentiality clause,

---

[2] *Clark's Super Gas v. Tri-State Systems*, 129 Ga. App. 650 (200 SE2d 472) (1973).

dismiss their case with prejudice, which had already reached this Court, and forbear their right to seek certiorari with the Supreme Court of Georgia. Northside Hospital explicitly demanded these obligations by the Keefes to ensure that it would "not be required to do any further legal work in the matter."

In February 1996, Northside Hospital sent the settlement papers to the Keefes along with a check for $25,000, with the understanding that the check would not be negotiated until the settlement was signed and returned. Thereafter, the Keefes refused to sign the settlement agreement that they had negotiated despite repeated requests by Northside Hospital. Over two months after entering into the settlement, the Keefes fired their original attorney and filed a legal malpractice action against him and his law firm. The Keefes' new attorney then notified Northside Hospital that the Keefes would not sign the settlement papers without modifications to the release clause, despite the fact that they had previously reviewed and accepted the release clause as it existed in the settlement agreement on February 21, 1996. The Keefes wished to alter the release clause to state that they released all claims "with the exception of legal malpractice claims against [their former attorney], which may raise claims against [such attorney] that could have originally been raised against Northside Hospital, Inc., and/or its employees." The Keefes' attorney contended that the modifications were necessary to protect the Keefes' rights to proceed against their original attorney.

In response, Northside Hospital informed the Keefes' new lawyer that it would not accept the proposed modifications, and, on May 14, 1996, Northside Hospital requested that the settlement draft be returned to them. The next day, Northside Hospital stopped payment on the settlement check.

Meanwhile, the Keefes proceeded with their legal malpractice action against their original attorney, which ultimately settled. Then, more than six months after the Keefes' last correspondence with Northside Hospital, counsel for the Keefes' original attorney wrote Northside Hospital to inquire whether the settlement offer, as originally agreed upon without the release modifications, was still available. That same day, Northside Hospital responded that no settlement offer remained as a result of the Keefes' breach of the original offer and its notifications in May that it considered the contract terminated. Finally, on February 26, 1997, more than a year after Northside Hospital sent the settlement package to the Keefes, the Keefes returned an executed copy of the original agreement and demanded a check for $25,000. When Northside Hospital refused to pay, the Keefes initiated the underlying action to enforce the original settlement agreement.

By refusing to sign the original settlement agreement without

further modifications, the Keefes breached their agreement with Northside Hospital. First and foremost, the Keefes had committed to sign the document as it existed, and they simply did not do so. In addition, they demanded new settlement terms which could result in additional legal work for Northside Hospital. The very process of negotiating the Keefes' new release terms would require additional legal work. Furthermore, pursuant to the modified agreement proposed by the Keefes, Northside Hospital faced the possibility of being involved in a legal malpractice action which the Keefes contemplated bringing against their original attorney. Any such action would necessarily involve a consideration of the validity of the underlying claim against Northside and would require testimony and the involvement of its personnel, as well as additional legal fees. The issues it had sought to conclude by settlement would again be the subject of litigation involving Northside, directly or indirectly. Northside had already succeeded in having the Keefes' case dismissed at the trial level, and this court had affirmed the dismissal. *Keefe v. Northside Hosp.*[3] The only purpose in Northside's settling of the case at this point was to eliminate the expenses and risk attendant with the certiorari process in this case and its involvement in other litigation arising out of the facts of this case. A review of the very language insisted upon by the Keefes demonstrates that Northside would not accomplish the finality it intended in settling the case.

Thus, the Keefes breached the contract when they refused to comply with the settlement they had negotiated and agreed to and simultaneously demanded other terms directly contrary to Northside Hospital's interests. Because of this breach, Northside Hospital requested the return of the unsigned settlement agreement and stopped payment on the settlement check, thus terminating its obligations under the written contract. See OCGA § 13-5-8. As stated in the majority opinion, the trial court determined, inter alia, that "(6) [d]efendant promptly notified plaintiffs of its intention to rescind the settlement agreement and did properly rescind." From this point, the Keefes no longer had a valid contract to enforce. Their breach of the contract alone released Northside from its obligation to perform thereunder. See *Clark's Super Gas*, supra.

*Stacey v. Jones*,[4] relied on by the majority, held that the oral agreement therein involved was not rescindable under the facts of that case based upon a delay in receiving the settlement check and a written settlement agreement in a timely fashion, because the subject contract failed to provide either that time was of the essence

---

[3] *Keefe v. Northside Hosp.*, 219 Ga. App. 875 (467 SE2d 9) (1996).
[4] *Stacey v. Jones*, 230 Ga. App. 213, 215 (2) (495 SE2d 665) (1998).

therein or specify a date for the receipt of such items. *Jones* did not address the issue raised in this case, that is, the effect of the breach of a written contract by a party's failure to comply with the specific terms which it had negotiated. Thus, *Jones* has no application to this case.

Accordingly, I would affirm the trial court's grant of summary judgment to Northside Hospital.

I am authorized to state that Presiding Judge Pope joins in this dissent.

### ·ON MOTION FOR RECONSIDERATION.

We have considered appellee's motion for reconsideration and adhere to our opinion. Although the majority of the motion simply duplicates earlier arguments raised by appellee, appellee does point out facts, which both parties failed to include in their initial briefs, that were not addressed by either the majority or the dissent. Specifically, in addition to the changes discussed in our initial opinion, the revised release drafted by the plaintiffs' second attorney also omitted five standard form paragraphs[5] that were included in the original release.[6]

Since the omission of these paragraphs also fails to materially change the settlement agreement between the parties, it did not authorize the hospital to rescind the settlement agreement. Again, the terms of the bargained-for settlement between the parties, as demonstrated by the letters between counsel, was that the Keefes would (1) release all claims that could have been brought as a result of Mr. Keefe's June 11, 1992 admission to the hospital, (2) forgo seeking certiorari in the Supreme Court, and (3) dismiss their case against the hospital. In exchange for these terms, the hospital agreed to pay $25,000. Execution of every single paragraph in the hospital's "standard settlement package" was not a condition of the settlement. In this case, the Keefes lived up to their end of the bargain by dismissing their case, forgoing certiorari in the Supreme Court, and agreeing to release all claims brought as a result of the 1992 hospital admission. The hospital, by arbitrarily insisting upon immaterial terms in a release and refusing to pay the $25,000 as agreed, has not

---

[5] These paragraphs addressed choice of law, competency, reliance of releasors, reliance of releasees, and merger.

[6] It appears that these five paragraphs may have been inadvertently omitted from the revised release as they are the only paragraphs contained on page 3 of the original release. Moreover, until now, the parties never discussed or briefed the omission of these paragraphs.

lived up to its end of the bargain and cost itself the additional legal fees it sought to avoid by settlement.

*Motion for reconsideration denied.*

BLACKBURN, Presiding Judge, dissenting.

Although I stand by my original dissent, I am troubled by certain conclusions reached by the majority on reconsideration of this case. First, there is no evidence of record that the omission of the five additional paragraphs by the Keefes was inadvertent. This is pure speculation by the majority. Second, execution of the settlement package negotiated and agreed to by the Keefes on February 21, 1996, was required by them, and, when they failed to comply, Northside Hospital had the right to terminate the settlement, which it did. Third, it cannot be said that the Keefes, who wilfully refused to sign the settlement they agreed upon, lived up to their end of the bargain. Finally, the majority acknowledges that a purpose of the settlement in this case was to prevent Northside Hospital from incurring any additional legal fees and that, as a result of the Keefes' failure to sign the original agreement, such fees were incurred. Despite this acknowledgment, the majority continues to uphold the settlement, contending that Northside Hospital cost itself these fees which were actually caused by the Keefes' breach.

Northside Hospital simply tried to enforce the settlement that both parties in this case freely agreed upon, and, when the Keefes breached, it validly terminated the agreement. The Keefes destroyed the bargain in this case. They should not be allowed to spontaneously resurrect it.

I am authorized to state that Presiding Judge Pope joins in this dissent on motion for reconsideration.

DECIDED JULY 11, 2000 —
RECONSIDERATION DENIED JULY 31, 2000

*Davis, Zipperman, Kirschenbaum & Lotito, E. Marcus Davis, Christopher R. Smith,* for appellants.

*Goldner, Sommers, Scrudder & Bass, Susan V. Sommers, Glenn S. Bass, Tammy S. Skinner,* for appellee.